Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia ⏷

### Norfolk Division

FILED

JUN 1 3 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| STEPHEN T. MCPHERSON AND PROSPECTIVE CLASS | Case No. _2:22 cv 249_ |
| | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☐ Yes ☑ No |
| **-v-** | |
| THE SECRETARY OF THE NAVY CARLOS DEL TORO AND THE BOARD FOR CORRECTIONS OF NAVAL RECORDS | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | STEPHEN T. MCPHERSON & PROSPECTIVE CLASS |
| Street Address | 3200 LYNNHAVEN DRIVE #309 |
| City and County | VIRGINIA BEACH |
| State and Zip Code | VA 23451 |
| Telephone Number | 360-281-0119 |
| E-mail Address | STEPHEN_T_MCPHERSON@HOTMAIL.COM |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

    Name                          CARLOS DEL TORO AND THE BOARD FOR CORRECTIONS OF

    Job or Title *(if known)*       THE SECRETARY OF THE NAVY; BCNR

    Street Address          General Counsel of the NavyNaval Litigation Office720 Kennon St

    City and County        Room 233, Washington Navy Yard,

    State and Zip Code     DC 20374-5013

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
1. Administrative Procedure Act
2. U.S. Constitution 4th, 5th, 6th, and 14th Amendments.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

and has its principal place of business in the State of *(name)*

_____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of

*(foreign nation)* _____.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

Plaintiff seeks certification of a class of U.S. Navy sailors wrongly passed over for pay and benefits whose careers were wrongfully terminated by U.S. Navy officals who were accepting bribes in the Fat Leonard scandal.  The amount will be over $75,000.

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

Senior officers of the Navy have accepted bribes, kickbacks, gifts, and the services of prostitutes in exchange for confidential operational information regarding U.S. Navy ship schedules, deployment timelines, and selections of ports of call.  Those same officers regularly sat in judgment of a vast amount of sailors, handed out punishment against those sailors, and destroyed the lives, careers, and employment prospects of those sailors.  Now, senior officer - including Admiral - misconduct has come to light showing that these corrupt officers should not have sat in judgment of sailors for major to minor infractions or allegations of the same.  Each plaintiff is entitled to a review of his or her record and appropriate relief.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

(1) Grant all appropriate and equitable relief to redress past injuries and to restrain future injury of Plaintiff and members of the proposed class by Defendant; (2) Direct, by issuance of an injunction, measures sufficient to ensure that Defendant establishes a onstitutionally and statutorily compliant adjudication and review process for all sailors against whom the Navy took disciplinary action, and against whom the Navy has allowed that illegal action to stand. This injunctive review would order a review of all disciplinary actions taken by corrupt Fat Leonard scandalized officers. These steps include but are not limited to, adequate and good faith notice to all members of the proposed class of the ongoing or pending review of their cases, as well as adequate and good faith efforts to ▣

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

review the same. (3) Direct, by issuance of an injunction, measures sufficient to ensure that Defendant meaningfully and consistently applies its own procedural standards in correcting whether to upgrade a discharge status; (4) Direct, by issuance of an injunction, that the letter of reprimand issued by Kenneth Norton against Plaintiff McPherson be removed from his official record and that he be reinstated to the Naval service; (5) Award fees and costs as appropriate to Plaintiff (Plaintiff is filing pro se and brings this action on behalf of the class pro bono); and (6) Grant any other and further relief that the Court deems just and proper.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            06/10/2022

Signature of Plaintiff

Printed Name of Plaintiff        STEPHEN T. MCPHERSON

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
**NORFOLK DIVISION**

STEPHEN T. MCPHERSON
                    Plaintiff(s),

            v.
THE SECRETARY OF THE NAVY CARLOS             Civil Action Number: _____
DEL TORO & THE BOARD FOR
CORRECTIONS OF NAVAL RECORDS
                    Defendant(s).

# LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of**___ MCPHERSON V. DEL TORO ___.
                                                    **(Title of Document)**

 STEPHEN T. MCPHERSON
Name of *Pro Se* Party (Print or Type)

*Stephen McPherson*
Signature of *Pro Se* Party

Executed on: ___ 10 JUNE 2022 ___ (Date)

                        **OR**


**The following attorney(s) prepared or assisted me in preparation of** _____.
                                                    **(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
VIRGINIA**

| | |
|---|---|
| STEPHEN MCPHERSON, on behalf of himself and all others similarly situated, | No. _____ |
| *Plaintiffs*, | |
| v. | June 10, 2022 |
| CARLOS DEL TORRO, Secretary of the Navy, and the BOARD FOR CORRECTIONS OF NAVAL RECORDS, | |
| *Defendant*. | |

## COMPLAINT

The United States Navy must stop prioritizing criminals over sailors.  Since 2006, senior officers of the Navy have accepted bribes, kickbacks, gifts, and the services of prostitutes in exchange for confidential operational information regarding U.S. Navy ship schedules, deployment timelines, and selections of ports of call.  These officers traded United States national security information with a Malaysian national, Leonard Francis, of Glenn Defense Marine (a ship supply and husbanding agency) in exchange for personal financial gain and sexual enjoyment paid for by United States taxpayers.  "Fat Leonard," as Mr. Francis is known, overcharged the Navy $35 million dollars to pay off senior Navy leaders.  Since 2006, the U.S. Department of Justice has brought over 33 indictments and the U.S. Navy has reprimanded, censured, denied promotion, and forced the retirements of numerous Admirals (at the rank of 0-7 through 0-10), Captains (0-6's), Commanders (0-5's) and lesser ranking officers and non-commissioned officers.  Various media reports place the level of corruption at between 60 and 100 individual Navy leaders.

3

Each of these corrupted Navy leaders sat in judgement of sailors of lesser rank both within and outside their commands. The number of sailors affected by this corrupt cadre of officers is estimated to be in the hundreds. This judgement included Article 15 and Non-Judicial Punishment proceedings (NJP) as well as numerous Courts Martial and various other disciplinary proceedings, such as Show Cause hearings. Many of these sailors were separated from the military with less-than-honorable discharges due to minor infractions hypocritically prosecuted by Naval officers who at the time were lining their pockets with taxpayer laundered money and enjoying the pleasures of prostitutes paid for by the same. Many sailors who suffered under this appalling hypocrisy are now permanently stigmatized and barred from accessing essential benefits like the GI bill and much-needed mental health care. Given the misconduct on the part of these "Fat Leonard" officers, the disciplinary proceedings taken against subordinate sailors are invalid, improper, and unenforceable.

In 1947, Congress created the Board for Corrections of Naval Records (BCNR) to provide a method for correction of errors or removal of injustices from current and former Navy and Marine Corps member's records without the necessity for private legislation (Title 10 U.S. Code § 1552). This Board purportedly provides redress to sailors and review of Department of the Navy decisions, including disciplinary actions. Yet the BCNR rejects the petitions of nearly all who apply.

Stephen McPherson brings this class action on behalf of Navy and Marine Corps veterans who continue to be unlawfully denied review and expungement of the disciplinary actions taken against them by corrupted U.S. Navy officials. He is a licensed attorney at law, a Naval Aviator, and a GS-14 employee for the Department of Defense. In the Navy he has served as a Fleet Aviator, a Flight instructor, and an Aviation Training Officer.

4

He has earned his master's degree from the Naval War College, his Officer of the Deck

qualification, and deployed to the Horn of Africa, the Persian Gulf, and South America.  He

has flown combat missions and served under fire.  His awards include two Navy

commendation medals amongst others.

The Secretary of the Navy (SecNav) and the BCNR violate the Administrative Procedure

Act by issuing decisions that are arbitrary and capricious, inconsistent with relevant statutory law,

and deprive Plaintiffs of their Fifth Amendment rights to due process of law. The SecNav and

BCNR's actions are in contravention of common law, statutory law, and Supreme Court

precedent.

On behalf of himself and other similarly situated current or former United States sailors,

Plaintiff McPherson asks this Court to set aside and hold unlawful all adverse actions taken

against sailors by corrupted officers in the Fat Leonard scandal.  Plaintiff requests that this

Court order the names of all officers prosecuted, censured, or forced to retire (or in any other

way disciplined) be provided to the Plaintiff, and that the Navy be directed to provide the

names and contact information of any and all sailors who had adverse actions taken against

them by these individuals listed herewith.  The list of corrupted officers shall include those

made known to the public, and those known only to the Navy.  Plaintiff further requests notice

be given, by the Defendants, to each and every sailor negatively impacted by the corrupted

officers in the Fat Leonard case.  The Plaintiff asks the Court to issue appropriate injunctive

relief to ensure that sailors records may finally reflect the true character of their service and that

where possible, sailors' careers may be saved or rehabilitated.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331. This action arises under the

Administrative Procedure Act, 5 U.S.C. § 706.  Venue lies in this district pursuant to 28 U.S.C. §

1391(e)(1)(C). Plaintiff Stephen McPherson is a Virginia resident.  No real property is involved

in the action. Defendants Carlos Del Toro and the Board for Corrections of Naval Records are

sued in their official capacities as officers of the United States.

## PARTIES

Stephen McPherson is a former active-duty Naval officer, now serving in the U.S.

Navy Reserves.  Other Plaintiffs not yet named are current and former active and reserve duty

Navy sailors disciplined by corrupt Fat Leonard officers.  Stephen McPherson is a Virginia

resident and veteran of the U.S. Navy.

Defendant Carlos Del Toro, Secretary of the Navy, is sued in his official capacity.

Defendant Board for the Correction of Naval Records is sued in its official capacity.

## REGULATORY BACKGROUND

The BCNR may correct military records.  The statute does not establish any sort of

internal appeals process.  Federal courts may review BCNR decisions as final agency actions

under the Administrative Procedure Act. 5 U.S.C. §§ 702-06.

The Navy and other administrative agencies are responsible for maintaining records

for a variety of official purposes, including judicial review of agency action. 5 U.S.C.

§ 552a(e)(5); 44 U.S.C. §§ 3101, 3301.

## FACTS AND PROCEEDINGS

### Allegations as to Class Representative Stephen McPherson

Following the terrorist attacks on September 11, 2001, Plaintiff left a promising career

as an attorney to serve and protect his country as a Naval Aviator in the United States Navy.

Plaintiff's career in the Navy included multiple deployments to the Persian Gulf, the Horn of

Africa, and South America. He is a combat veteran, having served under fire from Somali pirates

on separate occasions while deployed. During his service, Plaintiff had a son born with alobar

6

holoprosencephaly, a severe brain defect. Plaintiff's son died shortly after birth in Plaintiff's arms. Despite having to cope with the loss of his son, Plaintiff received little support from the Navy, and was required to complete long absences from home. Plaintiff vigorously and enthusiastically completed his duties as assigned, and continued to receive high performance evaluations, several times being ranked as the highest performing and "number one" officer amongst his peers.

In August of 2011, Plaintiff was assigned to work as a Staff Action Protocol Officer for the Chief of Naval Forces Europe, Chief of Naval Forces Africa, Commander Sixth Fleet (CNE-CNA-C6F). Plaintiff worked in an office adjacent to a Navy civilian employee, Ms. Nicole Thomas. Though the feelings were not reciprocated, Ms. Thomas, pursued Plaintiff romantically. On two occasions, Ms. Thomas forced unwanted kisses on Plaintiff. Plaintiff stopped Ms. Thomas from any further physical contact. It was later revealed that Ms. Thomas and her husband were swingers interested in sexually pursuing both Plaintiff and his wife. These advances were not accepted (See Exhibit 1).

Subsequently, on January 20, 2012, Plaintiff was notified by the CNE-CNA-C6F Staff Judge Advocate (SJA) that he was being investigated for violating Article 133, Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 933, conduct unbecoming an officer and gentleman, and Article 134, UCMJ, 10 U.S.C. § 934, general article. This action was at the insistence of Rear Admiral Kenneth Norton, (hereinafter "Norton" or "Admiral Norton"), then the Chief of Staff to the Commander of Sixth Fleet. The investigation was initiated based on Facebook communications provided to Plaintiff's command leadership by Ms. Thomas's husband. Specifically, Plaintiff, was investigated to determine whether he engaged in conduct unbecoming an officer and a gentleman and conduct in violation of good order and discipline.

Chief Thomas worked for Commander, Submarine Group 8, Rear Admiral Jamie Foggo.

Admiral Foggo was and is a close friend of both Chief Thomas and Admiral Norton. Ms. Thomas relayed that she and her husband were sexually active with each other while they were still married to other people, and that she enjoyed multiple sexual partners at the same time, as such acts were "good work if you can get it." YNCS Thomas, while on active duty, committed adultery, was never prosecuted for it, while here Plaintiff was prosecuted for not committing adultery.

The investigation revealed that Ms. Thomas's husband accessed her Facebook account without authorization, in violation of 18 U.S.C. §2510 *et seq.*, and created, edited, and altered communications in a document he turned in to the Navy to give the appearance of an inappropriate relationship between the Plaintiff and Ms. Thomas. Three days after turning these communications in to Plaintiff's command, Ms. Thomas's husband signed a statement requesting retraction of his actions and the fabricated or altered materials he had submitted (Exhibit 2). Ms. Thomas later testified and wrote that it was Yeoman Chief Thomas' idea to contact Plaintiff about his wife (February 3, 2012 "…but it was his idea to email you in the first place!"(Exhibit 3).[1]

Under 18 U.S.C. §2511(1)(c)(d), no one may use or disclose the contents of an electronic communication, knowing or having reason to know that the information was obtained by a violative interception, regardless of whether the user procured the interception.

Plaintiff was told he could either elect a general court martial which would place his law license in jeopardy, or administrative Non-Judicial Punishment (NJP). Plaintiff was told by the Staff Judge Advocate that the command knew he was "not looking for a girlfriend" and that the command knew "he was not the aggressor in the situation." Plaintiff was coerced by leadership to accept Nonjudicial Punishment ("NJP") under Article 15, UCMJ, 10 U.S.C. § 815, to avoid potential Disbarment of his law license if found guilty of violating the UCMJ at court martial.

On February 16, 2012, Plaintiff appeared before Rear Admiral Kenneth Norton who

---

[1] YNC Thomas approached Plaintiff in person on two separate occasions and told Plaintiff to "use her (his wife) like a rented mule" and "bleed her like a stuck pig." Plaintiff did neither.

repeatedly called Plaintiff a coward, threatened Plaintiff and his family, threatened

Plaintiff's witnesses and acted in an out-of-control manner. The attending Staff Judge

Advocate stopped the proceedings and warned Norton that he had exceeded his authority and

was acting unlawfully. Plaintiff remained silent. Norton determined Plaintiff engaged in an

unduly familiar relationship with the wife of a chief petty officer. Plaintiff received a letter of

reprimand, placed in his OMPF, and forfeiture of pay ($1,000.00) per month for two months.

(see affidavit of Plaintiff, Exhibit 4).

  Plaintiff was never asked, nor did he enter a plea to the charges against him at NJP.

Additionally, Plaintiff did not receive the Report and Disposition of Offense(s) (NAVPERS

1626/7), which notifies service members of the nature of the accusations and of his or her rights,

until twenty (20) days after the NJP, on March 8, 2012. This notification form requires the

signature of the individual charged with an alleged Uniform Code of Military Justice (UCMJ)

violation.

  After the NJP, the SJA directed Plaintiff into his office and repeatedly advised him not to

commit suicide. Plaintiff never mentioned or considered suicide. While prosecuting

Plaintiff, the Appellee Navy sent Plaintiff a handwritten birthday card from Admiral Norton's

then three-star boss thanking him for his "daily efforts and professionalism" (Exhibit 5).[2]

  Plaintiff's appeal of the NJP to the Commander, US SIXTH FLEET, (the same three star

Admiral who sent him the birthday card), went unanswered for over a year when the Vice-

Admiral declined to rule and instead forwarded Plaintiff's appeal to the Vice Chief of Naval

Operations (VCNO), the second highest uniformed officer in the Navy. After over a year, the

---

[2] While terminating Plaintiff's career as an active-duty officer under threat of destroying his law license, Navy
leadership was concerned enough to repeatedly order Plaintiff not to commit suicide on his way to this decade long
punishment. Navy leadership gives lip service to stopping veteran suicides while simultaneously taking actions like
these. Now more soldiers and sailors have died from suicide than from combat deaths in America's latest wars.
https://www.nbcnews.com/news/military/9-11-military-suicides-dwarf-number-soldiers-killed-combatn1271346...
and... https://www.theepochtimes.com/americas-veterans-are-killing-themselves-at-an-alarmingrate_
3918982.html?

VCNO declined to rule. Plaintiff's appeal was returned to the original authority, Admiral

Norton, who denied Plaintiff's appeal.

At the time of the Navy's witch hunt against Plaintiff (2012), Rear Admiral Norton placed

Plaintiff under a Military Protection Order (MPO), ordering him to have no contact with Chief

Thomas or Nicole Thomas. Plaintiff fully complied. Contemporaneous to this, Ms. Thomas

continued to approach Plaintiff seeking both a romantic and sexual relationship, including

contacting him over 50 times via telephone, leaving gifts at his desk, and writing him

approximately 50 romantic emails (see Exhibit 6). Thirty-one pages of over 100 different contacts of

Plaintiff by the Thomas's are included here, which Plaintiff never responded to. These contacts

occurred before, during, and well after the NJP.  The Navy does not prosecute sexual harassment

when the perpetrators are protected by corrupt Admirals.

As stated, Plaintiff never responded to these advances and instead turned the written

materials, gifts, and record of Ms. Thomas's telephone calls to him over to the Navy. Plaintiff

did this in good faith and as further grounds for his various appeals. Plaintiff later discovered

through a Privacy Act request that the Appellee Navy bundled these unanswered

communications from Ms. Thomas with the rest of the materials used against Plaintiff,

(including the unlawful communications obtained in violation of 18 U.S.C. §2510 *et seq.*) and

submitted them to his personnel records maintained by the Bureau of Naval Personnel where they

have subsequently been used as evidence against Plaintiff and used to attempt to deny him future

promotion.  Instead of the continued and ongoing sexual harassment being used as evidence of

Plaintiffs innocence, the Navy used and continues to use these materials as evidence against

Plaintiff.

When Plaintiff requested that the Navy ask Ms. Thomas to stop contacting him, he was told

the MPO applied against him, not the Thomas's.  The advances continued for months, with Ms.

Thomas continuing to write Plaintiff emails and even acknowledging "you can't respond. I get that." (Id).

Plaintiff and his assigned defense counsel's requests to expunge the fraudulent and unlawfully obtained communications were denied. On July 17, 2012, Plaintiff was notified his name was being withheld from the FY-13 Active-Duty Lieutenant Commander URL Promotion List. Plaintiff was issued an adverse performance evaluation for the period of February 1, 2011 to March 23, 2012, by Admiral Norton. On or about March 24, 2012, Plaintiff was reassigned to Naval Support Activity Naples, where he once again received superior performance evaluations, and, once free of Admiral Norton, was twice ranked as the number one officer in his grade.

On February 14, 2013, Plaintiff was ordered to show cause for retention, and a Board of Inquiry elected to retain Plaintiff in the Navy. However, the Navy refused to remove any adverse materials. Now a marked man, Plaintiff was removed from all flying duties and removed from any promotion track with the Navy. On December 16, 2013, Plaintiff was reassigned against his will to Littoral Combat Ship Squadron One (LCSRON ONE) in San Diego, California. Plaintiff again carried out his assigned duties and kept faith with the Navy. In removing Plaintiff from the aviation community, the Navy ensured Plaintiff had no chance of promotion.[3]

In April 2014, Plaintiff's supervisor authorized him to take his wife to the hospital as his wife had entered into labor with their second child. While on the way, the Chief of Staff, Commander Jennifer Ellinger, left a voicemail for Plaintiff's supervisor stating she was "about to rip LT McPherson a new asshole" due to his not responding to Commander Ellinger's email to "COME SEE ME NOW!" Plaintiff was unsure what constituted such treatment but soon found out.

Immediately following the birth of his son, Plaintiff was ordered to report to

---

[3] There was simply no avenue for advancement. The equivalent action would be if the Navy removed a Surface Warfare Officer and placed him or her in an aviation unit where performance is measured by flight time and other aviation metrics – when just as a Naval Aviator does not drive ships, a Surface Warfare Officer cannot fly aircraft. Without having attended flight school and earning their wings, no pathway would exist for that officer to advance as they have no training in that specialty. So too, there was no pathway for Plaintiff to advance his career. In the Navy, the process is the punishment.

Commander Ellinger, at which point she berated and cursed at Plaintiff, stating that Plaintiff

was "an embarrassment to this command," and that she was "looking for a fucking bottom feeder

Lieutenant to fuck." Plaintiff was an "embarrassment" and a "bottom feeder" because

of the adverse fitness report issued by Admiral Norton and the fact that he was a Naval Aviator

assigned to a surface ship squadron. Plaintiff was marked for career assassination.

As stated, in 2013, the Secretary of the Navy removed Plaintiff from the FY-13 Active-

Duty Lieutenant Commander Unrestricted Line Officer (URL) Promotion List, which constituted

his first failure of selection for promotion. The Secretary of the Navy memorandum removing

Plaintiff's selection for promotion falsely stated Plaintiff had committed "fraternization"

under Article 134 of the UCMJ. Fraternization is an entirely different charge and one under

which Plaintiff was never charged. Subsequently, Plaintiff received his second failure of

selection for promotion, and was involuntarily discharged pursuant to 10 U.S.C. § 632 on March

31, 2016. Plaintiff has never lied to argue his case, but the Navy has.

Plaintiff petitioned Appellee BCNR on August 1, 2014, requesting removal of false and

adverse records in his OMPF, reinstatement of promotion to O-4, and a Special Selection Board

for Department Head screening and the continuation of his career. Plaintiff included the following in

support of his BCNR application:

> a) Performance evaluations (Fitness Reports) showing his number 1 ranking (twice) and after being targeted for career elimination by the Navy;
> b) co-worker's statements in support of Plaintiff;
> c) Ms. Thomas's sworn statement(s);
> d) YNC Thomas's retraction statement;
> e) legal briefs submitted by Plaintiff's previous counsel regarding the Navy's use and consideration of information obtained in violation of 18 U.S.C. §2510 *et seq*.;
> f) evidence of Ms. Thomas's continued unwelcome advances;
> g) a statement from Plaintiff's supervisor and other leadership in the command in support of Plaintiff including that of two Admirals;
> h) the Report and Disposition of Offense(s) (NAVPERS 1626/7) which documented Plaintiff was not informed of his rights prior to NJP;
> i) letters of support from Plaintiff's follow-on Commander, Admiral Gray;
> j) a birthday card to Plaintiff from the command that had just previously imposed

12

NJP on him thanking him for his service and dedication to the nation;
k) an email with the subject, "COME SEE ME NOW!" from Plaintiff's
commander at his final command before being involuntarily separated; and
l) a voicemail from the above-mentioned commander stating she is "about to rip
[Plaintiff] a new asshole."

Plaintiff three times applied for selection in the Naval Reserve Full Time Support

program, applying first in the fall of 2014, again in the spring of 2015, and finally in the fall of

2015. Each time, the Navy either refused to adjust Plaintiff's proposed rotation date (PRD) to

afford his application any consideration or found some pretense to preclude submission.

On September 16, 2015, a three-member panel of the Appellee BCNR denied Plaintiff's

application for correction of his record, substantially concurring with the comments contained in

the advisory opinions from Navy Personnel Command: Performance Evaluation (PERS-32), Post

Selection Board Matters (PERS-833), and the Office of Legal Counsel (PERS-00J). The Board

concluded that Plaintiff's statement that his relationship with Ms. Thomas was purely platonic

was false; that mitigating factors and Plaintiff's assertion that he did not commit misconduct

were insufficient to remove the punitive letter of reprimand dated April 2, 2012; and that the

adverse performance evaluation was administratively and procedurally correct as written and

filed.

**Neither the advisory opinions, nor the BCNR provided any explanation for the**

**errors and injustices committed where the Plaintiff was not properly advised of his rights**

**at NJP; where the Appellee unlawfully considered fraudulent evidence obtained in**

**violation of 18 U.S.C. §2510 *et seq*. at the NJP, which was incorporated in the remarks on**

**the adverse performance evaluation, and which was also considered at the Board of**

**Inquiry and promotion board(s). Neither the advisory opinions, nor Appellee BCNR**

**addressed the convening authority's wrongdoing or lack of authority to hold the NJP.**

**Neither the advisory opinions, nor the Appellee BCNR addressed the ongoing sexual**

**harassment of Plaintiff by the Thomas's, nor the wrongful inclusion of those harassing materials in the record absent any distinguishing label, nor the false accusation of "fraternization." By not addressing any of these issues, the Board ensured an automatic rubber stamp for the Navy's actions absent any fair consideration of Plaintiff's case. In short, to be charged with anything by the Navy is to be punished by the Navy.**

Plaintiff appealed the BCNR's ruling to the U.S. District Court on 26 December 2018. On 4 March 2019, at the Navy's request, Plaintiff agreed to a voluntary and joint motion for remand to the BCNR. After yet another year's wait, the Board again ruled against Plaintiff, which resulted in various motions and cross motions before the District Court. On May 6, 2021 the District Court granted Appellee's motion for summary judgement. In each of its rulings against Plaintiff, the BCNR has called for "further information."

In 2019, Plaintiff received notification from the Navy that it had "neglected" to submit his name for a promotion board in the Reserves as required by statute and that a Special Selection Board would be held to consider his record. Plaintiff submitted the requisite materials and in March of 2019 was again promoted to Lieutenant Commander / O-4 for a second time (see Exhibit 7). **Rather than allow Plaintiff to continue his Naval career and be promoted in the Reserves, Appellee Secretary of the Navy placed yet another hold on Plaintiff's promotion in retaliation for filing his underlying lawsuit.** The Secretary of the Navy vigorously protects the actions of corrupt Admirals acting against sailors, but negates the actions of Selection Boards when they vote in favor of a sailor the Navy has targeted for elimination.

After being selected for promotion to Lieutenant Commander, Plaintiff applied for and was accepted into active drilling status with the U.S. Navy Reserves. The Secretary of the Navy immediately placed a BUPERS (Bureau of Naval Personnel) Control Group MAS code in Plaintiff's file which states that Plaintiff will not be in the Navy beyond a short amount of

time. Plaintiff plans to continue his career in the Navy or Navy Reserve.

In November of 2017, the Secretary of the Navy censured then retired Admiral Kenneth Norton for Conduct Unbecoming and Officer and a Gentleman, and for accepting bribes and the services of prostitutes both paid for by "Fat Leonard." The SecNav revoked Norton's various awards and medals and also reprimanded Norton for other undisclosed "personal misconduct" (Exhibit 8). This misconduct dated back to Norton's time in the Pacific, from approximately 2006 through 2011 before he moved to Italy. Norton was under investigation for wrongdoing at the time he sat in judgement of Plaintiff. Defendants knew of Norton's wrongdoing, yet decided to let his hypocritical and unfair actions stand.

Plaintiff has repeatedly, over the previous nine years, and through counsel (when he could afford such), asked for assistance from those who witnessed this case. These requests were always rejected. However, on July 9, 2021, Commander Dan Crouch, U.S. Navy (Retired), the Staff Judge Advocate for CNE-CNA-C6F who preferred charges against Plaintiff on behalf of Admiral Norton, provided the following affidavit to Plaintiff, which is also included as an exhibit 9:

> I served as the Fleet Judge Advocate for the U.S. SIXTH Fleet while you were stationed and in Naples and, as the lawyer assigned to the sixth fleet staff, I was fully aware of all details of the situation leading to your non-judicial punishment (NJP). Having served as the legal advisor for hundreds of such proceedings, I can say without hesitation that the consequences of your NJP have been wholly disproportionate for a minor (very minor) lapse in judgment.
>
> While I will avoid disparaging RDML Norton's character in my support of your efforts, I would be remiss if I didn't point out the irony of his findings in your case given his involvement in the notorious "Fat Leonard" case. It was clear from the findings of that case that RDML Norton personally engaged in far worse behavior and displayed far worse judgment than anything you were accused of. In fact, you actually ended the questionable relationship in your situation BEFORE it became intimate, while RDML Norton appears to have shown far less restraint.
>
> Further, had RDML Norton's well-documented misbehavior in the Fat Leonard case been known at the time of your NJP, his authority to conduct NJP would have been withheld by the sixth fleet commander. I know this to be true because there was precedent for withholding NJP authority in our AOR, as the SIXTH Fleet Commander withheld NJP authority from the

15

Commanding Officer of USS MOUNT WHITNEY in a situation where that
Commanding Officer was implicated in personal misconduct. Clearly, had
anyone at US SIXTH Fleet been aware of RDML Norton's behavior in the Fat
Leonard scandal, he would not have been permitted to proceed with your (or
any) NJP. Had I been aware of RDML Norton's involvement in the Fat
Leonard case, I certainly would have advised the commander to
withhold such authority.

In short, RDML Norton lost the moral imperative required of a leader
to conduct NJP. According to the findings of the investigations, RDML
Norton himself committed egregious acts and for him to pass judgment after
engaging in such behavior was both hypocritical and unfair.

Please let me know if you have questions.
Best of Luck, Stephen.
Dan

Sabrina Norton, the former wife of Kenneth Norton, recently wrote the following on behalf of

Plaintiff, which is also included as an exhibit 10:

### Affidavit of Sabrina Norton

My name is Sabrina Norton, and I am writing this letter to the United States
District Court for the District of Columbia on behalf of Stephen McPherson.[1] This
regards Civil Action No. 18-3082, which is his action against the United States Navy to
seek removal of a punitive letter from his record submitted by my former husband,
Admiral Kenneth Norton. I was married to Kenneth Norton for over 16 years and we
had five children together.

I believe this court needs to be made aware of the character of Kenneth Norton
before it decides to either back his actions, or grant the request of Mr. McPherson. To
describe life with Kenneth Norton as a nightmare is an understatement, and it is no
surprise to me that he continued to spread pain and suffering to those he came in
contact with. My nightmares from him are many and varied, from rampant and
constant verbal, psychological, and physical abuse of our children to lies, deception,
and the attempted destruction of my family and my life. My recitations here are not
the angry or cliched ramblings of a disgruntled former spouse, but are backed up by
court records and counselor statements. I hope that sharing these facts will help this
court decide to do the right thing regarding Stephen McPherson when the Navy so far
has refused to.

A person's record matters. It shows demonstrated patterns of behavior and can
help determine whether or not a person should or should not be believed when their
actions are called into question. Kenneth Norton's actions are abusive, hypocritical,
and unethical. The Navy, in backing his actions, continues to make a grave mistake
regarding Mr. McPherson.

In my life, Kenneth Norton's actions included the repeated verbal and physical
abuse of all five of my children. It was the rare family dinner that did not result in his
backhanding one or more of my children, and such violence was not limited to meal
times. He was particularly violent towards our sons, and on many occasions, I had to
intervene in order to protect them from serious physical injury. He struck our eldest

son hard enough to leave marks on his head and at various times, despite my interventions, inflicted other injuries.

All of my children have since had to go through counseling. To this day, some 15-20 years later, my children still refuse all contact with their father based on his violent abuse – for which he has never apologized.

Eventually I had no choice but to file restraining and protection orders against him, which he violated and was found in contempt of court for, as he believes he is above the law, can do whatever he wants, and that rules do not apply to him. This pattern continued throughout our marriage and there is no doubt in my mind that he did this type of thing in his activities in the Navy. I do not understand how the Navy can continue to align with someone who has such contempt for the law, and who committed criminal acts while on active duty.

Mr. McPherson was charged with conduct unbecoming an officer and a gentleman by Kenneth Norton over what appears to be a next to nothing infraction. It is my understanding that Mr. McPherson was kissed by a woman and then he asked her to stop.  This court should be made aware of just what conduct unbecoming in the ranks of the Navy is, as illustrated by my former husband.

First, Kenneth Norton conducted multiple affairs without my then knowledge during our marriage, and he conducted a multi-year affair while in uniform and while a Captain (0-6) of one the Navy's 11 aircraft carriers, the USS Ronald Reagan. He conducted this affair with his Supply Officer, Sharee (Fish) Norton who he went on to marry after our divorce.

For Kenneth Norton to have brought charges against Mr. McPherson over a kiss is the height of hypocrisy. Second, while we were still married and also while he was a ship's captain, Kenneth Norton accepted bribes in the form of gifts with high monetary value and the services of prostitutes as part of the Glenn Defense Marine Fat Leonard scandal. In return for such "gifts," he would overpay the contractor for in port ship services, in effect taking part in a kickback scheme that fleeced American taxpayers to line his own pocket and provide himself with sexual enjoyment. He has since been censured by the Secretary of the Navy for these actions, and his earned medals and awards revoked. Again, for him to have even brought charges against Mr. McPherson is the height of hypocrisy and I cannot understand why the Navy would continue to back these actions.

Finally, there are other actions taken that show the character of Kenneth Norton and why the Navy should cease supporting him.  Taken as a whole, they show deceit, lying, and a complete absence of ethics. When a Judge in a Superior Court for the State of Washington ordered him to stay away from me and from my children, he openly defied that order and put myself and my children in danger. Naval Officers are to immediately report any civil or criminal actions to their Commanding Officer, but he did not do this. If he had, he would have been disciplined. If he had, he would never have made the rank of Admiral. If he had never made the rank of Admiral, he never would have sat in judgment of Mr. McPherson.

The requirements to report civil and criminal actions to the Navy exist in order to maintain security clearances and protect our country. Instead, Kenneth Norton kept these matters hidden from the Navy – all while sitting in judgment of other sailor's careers, such as Mr. McPherson's, and all while ruining careers and handing out discipline and taking actions that would revoke other sailor's security clearances. To me, this is again, the height of hypocrisy.

Contemporaneous with these actions, he failed his physical fitness readiness tests due to being overweight, overeating, and refusing to exercise in order to remain within U.S. Navy standards. I would never fault someone who struggles with their weight, as many Americans do, but he sat repeatedly in judgement of sailors and their lives and handed out harsh punishments to sailors for violating the very rules he was himself repeatedly violated.

These hypocritical actions give weight to Mr. McPherson's testimony, and lessen the reliability of Kenneth Norton's, which I can further substantiate. There is no doubt in my mind that Kenneth Norton threatened Mr. McPherson and his family, prohibited his witnesses, and acted in an unruly, abusive, and illegal manner. There is no doubt in my mind that Kenneth Norton abused his authority and then lied about it after the fact, because that is exactly what he did with me and with his own children. That is the fact pattern of his life, and now even the Navy is aware of it and has censured him because of it.

In order to cover up his actions, Kenneth Norton told people throughout the Navy that he divorced me, and that he did so because I had cheated on him, when in fact, the opposite is true on both counts. I filed for dissolution of our marriage, and he cheated on me. I am astonished that this man's actions continue to receive backing from an organization that purports to care about its sailors, and emphasizes honor, courage, and commitment.

The Navy swept his actions under the rug, as it couldn't have truth and a flag officer brought up on child abuse charges, or disciplined for lying, adultery, bribes, or being found in contempt of court. The Navy waited until he retired, then merely censured him in the Fat Leonard bribery scandal, meaning they publicized only a portion of his misconduct and condemned only some of his actions. This has left people like Mr. McPherson in limbo, and is unfair and wrong. Nor can the Navy now, apparently, admit its errors in this case and let Mr. McPherson continue his Naval career.

I am not a lawyer, but I know enough to know that when a judge violates the law, that judge's orders are void. So too, Kenneth Norton should never have sat in judgement of Mr. McPherson, nor should his "ruling" on Mr. McPherson's career stand.

Stephen McPherson has shared with me part of his eight-year nightmare that he has been stuck in, fighting Kenneth Norton's and the Navy's actions. It is very saddening for me that he has had to go through this, but I am not surprised given the caliber of man Kenneth Norton became in life. Mr. McPherson has likened it to a nightmare where one finds himself dreaming that a monster has broken into your home and destroys all that you hold dear – your family, your career, your service to your country, and in short, your life. I know of just what he speaks, because the same monster came awfully close to destroying my life. The Navy, if it had any decency, would stop backing the monster. If it doesn't, then a federal judge ought to order it to do so. -Sabrina Norton

### Allegations as to the Class Generally

Since 2006, more than 60 Admirals and untold lesser ranking officers have been placed

under scrutiny for violating federal law through the acceptance of bribes, gifts, and other corrupt acts

at the hands of Fat Leonard. These commanders have sat in judgement of hundreds of sailors, handing out disciplinary actions for major and minor infractions. This has resulted in the withdrawal of promotions, the lack of consideration for promotion, termination of careers, and even sailors serving time in military prisons. Sailors have faced ruined careers, ruined lives, and less-than-Honorable discharges from the Naval service.

These veterans with less-than-Honorable discharges are generally ineligible for numerous benefits that their service has otherwise earned them. This includes compensation for service-connected disabilities, special unemployment compensation programs for veterans, a military burial, and benefits for surviving family members. Veterans with a less-than-Honorable discharge are categorically denied GI Bill education benefits and civil service retirement credits, and they are generally denied veterans' benefits provided by state and local governments. Without these benefits, veterans are unable to access the health care they need, are forced to pay out of pocket for educational and vocational training opportunities and are left largely without the support that is vital to ensuring a successful transition back into civilian life.

Furthermore, many employers reject applications from veterans with less-than-Honorable discharges, even when those discharges are associated with only minor misconduct. Employers regularly learn of an applicant's discharge status through a routine background check or by requesting that the veteran submit their discharge certificate (called a "DD-214," denoting the acronym on the form provided by the U.S. Department of Defense upon a military servicemember's discharge from the military) with their application. A less-than-Honorable discharge carries a stigma that casts doubt on a veteran's personal character and ability to perform as an employee.

A derogatory narrative reason for separation, which appears with the discharge status on a veteran's DD-214, can impose a similar or additional stigma on discharged veterans. For

example, many less-than-Honorably discharged veterans receive a narrative reason for separation of "personality disorder" or "misconduct" without any additional explanation. Even a "failure to promote" code on a DD-214 marks a veteran as someone for an employer to avoid.

### The Proposed Class Definition

This is a class action seeking equitable relief under Rule 23(b)(2) of the Federal Rules of Civil Procedure for violations of the Administrative Procedure Act and the Fifth Amendment. The proposed class includes all Navy veterans who: (a) were subject to discipline by any of the corrupted officers in the Fat Leonard scandal, to include court martial, Article 15 Non Judicial Punishment, Letters of Reprimand, or other military discipline; (b) discharged with less-than-Honorable discharges (this includes General and Other-than-Honorable discharges) by any of the corrupted officers in the Fat Leonard scandal; (c) or who received any other adverse action by any of the publicly known (and known only to the Navy) Fat Leonard officers.

### The Proposed Class Satisfies the Requirements of Rule 23

The members of the proposed class are so numerous that joinder of all members is impracticable. The proposed members' injuries derive from a unitary course of conduct by the centralized hierarchical systems supervised and controlled by the Defendants. Many members of the proposed class suffer serious psychological and physical consequences as a result of the long-term stigma associated with their less-than-Honorable discharges or discipline received, and the benefits they are denied as a result of their discharge status. There are questions of law and fact common to the proposed class, including, but not limited to, whether:

a. Defendants SecNav and BCNR have failed to review the actions of the "Fat Leonard" officers for corrective action;

b. Defendants have applied or failed to apply consistent standards to the treatment

of its sailors, resulting in arbitrary and capricious adjudications in violation of

the Administrative Procedure Act;

c.   Defendants have deprived Plaintiffs and putative classmembers of protected

liberty and property interests without due process of law, resulting in an

unconstitutional administrative process in violation of the Administrative

Procedure Act.

The claims of Plaintiff McPherson are typical of the claims of the proposed class

members. Plaintiff McPherson is representing himself pro se and will fairly and adequately

protect the interests of the proposed class.

Defendants, in failing to properly guarantee the rights of sailors under the U.S.

Constitution and the Administrative Procedure Act, allowed some sailors to be judged by

unqualified and corrupted officers. Defendants have acted or refused to act on grounds that

apply generally to the class, and therefore final injunctive relief and/or corresponding

declaratory relief is appropriate respecting the class as a whole.

## LEGAL CLAIMS OF THE CLASS

### CLAIM I

### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)— Arbitrary and Capricious Agency Action

The allegations of the preceding paragraphs are incorporated by reference as if they

were fully set forth herein. Defendant's denials of class members' BCNR appeal applications

are final agency actions. By failing to uphold federal law and precedent, Defendants have acted

arbitrarily and capriciously, in abuse of their discretion and contrary to law in violation of the

Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

Defendants have further abused their discretion by failing to notify affected parties of the

illegality of the administrative and criminal actions taken against them at the hands of corrupt Fat

Leonard officers.  The Defendants knew that they were carrying out the illegal acts of corrupt officers yet continued with those actions.  Veterans who are not attorneys, who do not follow military news or justice related matters, or who have simply attempted to move on with their lives have not been given notice that the actions the Navy took against them are illegal, should be reviewed, and found null and void.  This silence on the part of the Navy has made it impossible for veterans to know what steps they may take to clear their names, and therefore impossible for these veterans to prepare their applications effectively.

Given the systematic problems with the Navy's treatment and discharge of veterans at the hands of corrupt officers, the BCNR's application of the presumption of regularity in government affairs is arbitrary and capricious and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## CLAIM II

### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B)— Agency Action Contrary to Constitutional Right

The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.  The due process protections of the Fifth Amendment require that federal administrative agencies follow their own regulations and sub-regulatory guidance in conducting their adjudications and that they conduct adjudications in a fair and orderly manner.  By refusing to make any meaningful attempt to review the disciplinary actions taken by its corrupt cadre of officers, the Defendants have failed to follow their own rules and are in violation of their constitutional obligations and the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).  Veterans therefore lack the notice required by due process standards, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

Veterans improperly denied review of Naval discipline as it relates to their careers are subjected to undue stigma as a result of the discipline received at the hands of corrupt officers.

This includes career implications, erroneous discharge characterizations, and false narrative reasons for separation. They are also denied access to VA benefits and other services that they have rightfully earned through their service. Veterans are being deprived of both a liberty and property interest due to the Navy's silence and continued backing of its criminal cadre of corrupt officers.

**CLAIM III**
**Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B)**

The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein. Defendants failed to consider important evidence that demonstrated that Plaintiff McPherson was not guilty as charged by a corrupt Admiral, but in fact was pursued and a victim of ongoing sexual harassment. Defendants failed to follow their own rules by not responding to all the facts and issues raised in Plaintiff's application. Further, by not legally notifying other sailors brought up on charges by the Fat Leonard corrupt cadre of officers, Defendants have violated the Administrative Procedure Act. Defendants' failure to meaningfully review Plaintiff's application for, and its failure to consider and respond to all the facts and issues raised therein, was arbitrary and capricious, an abuse of Defendant's discretion, contrary to the due process protections of the Fifth Amendment, in excess of Defendant's statutory authority, and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully request that the Court:

    (1)    Grant all appropriate and equitable relief to redress past injuries and to restrain future injury of Plaintiff and members of the proposed class by Defendant;

    (2)    Direct, by issuance of an injunction, measures sufficient to ensure that Defendant establishes a constitutionally and statutorily compliant adjudication and review

23

process for all sailors against whom the Navy took disciplinary action, and against whom the Navy has allowed that illegal action to stand. This injunctive review would order a review of all disciplinary actions taken by corrupt Fat Leonard scandalized officers. These steps include but are not limited to, adequate and good faith notice to all members of the proposed class of the ongoing or pending review of their cases, as well as adequate and good faith efforts to review the same.

(3)     Direct, by issuance of an injunction, measures sufficient to ensure that Defendant meaningfully and consistently applies its own procedural standards in correcting the errors made by corrupt Naval officials sitting in judgement of sailors and veterans, including the expungement of adverse information and determining whether to upgrade a sailor's discharge status;

(4)     Direct, by issuance of an injunction, that the letter of reprimand issued by Kenneth Norton against Plaintiff McPherson be removed from his official record and that he be reinstated to the Naval service;

(5)     Award attorneys' fees and costs as appropriate to Plaintiff (Plaintiff is filing pro se and brings this action on behalf of the class pro bono); and

(6)     Grant any other and further relief that the Court deems just and proper.

Respectfully submitted,

By: Stephen T. McPherson
3200 Lynnhaven Drive #309
Virginia Beach VA 23451
(360) 281-0119
stephen_t_mcpherson@hotmail.com

Dated: June 10, 2022
Virginia Beach, VA

25

Plaintiff:

Stephen T. McPherson
3200 Lynnhaven Drive #309
Virginia Beach VA 23451
360-281-0119
stephen_t_mcpherson@hotmail.com


Defendant:

In accordance with Rules 4 and 45 of the Federal Rules of Civil Procedure, 32 C.F.R.
257.5(c), and Secretary of the Navy Instruction 5820.8A, any summons, complaint,
subpoena, or any other legal process served on the Department of the Navy, the
Secretary of the Navy, or any employee of the Navy in their official capacity, should  be
sent to the following address:

General Counsel of the Navy
Naval Litigation Office
720 Kennon St., SE, Room 233
Washington Navy Yard, DC  20374-5013